UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**03 - 60648**

Case No.

**CIV-MARTINEZ**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

MAGISTRATE JUDGE
DUBÉ

v.

BENJAMIN ROGATINSKY,

Defendant,

REUVEN ROGATINSKY,

Relief Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission (the "SEC" or "Commission"), alleges and states as follows:

### INTRODUCTION

1.      The Commission brings this action to enjoin and restrain Defendant Benjamin Rogatinsky ("Rogatinsky or "Defendant") the former chief executive officer of PrintontheNet.com, Inc. ("PrintontheNet" or "the Company") from violating the federal securities laws, to bar him from serving as an officer or director of a public company, and to order him and his father Relief Defendant Reuven Rogatinsky ("R. Rogatinsky") to return funds they misappropriated from PrintontheNet.  This action arises from a fraudulent private placement of securities by PrintontheNet in 2000.  Such relief is necessary, as Rogatinsky, through offshore transactions using nominee accounts, has illegally diverted approximately



$115,000 to $226,000 of the proceeds from that private placement to himself or members of his family.

2.     Such relief is also warranted due to a number of misrepresentations and omissions made at Rogatinsky's direction in connection with PrintontheNet's private placement of $3 million in common stock.   Specifically, PrintontheNet failed to disclose in its offering documents and in a Form 8-K filed with the Commission that the Company had assumed approximately $7.3 million in loan guarantees after it had acquired a related entity, PrintAmerica Interactive, Inc. ("PrintAmerica").   PrintontheNet also failed to disclose that the largest loan underlying the guarantees (worth approximately $7 million) was in default.   In addition, Rogatinsky caused the financial statements included in the Form 8-K and the placement memorandum to materially misstate PrintAmerica's and PrintontheNet's pre-merger financial performance.

## DEFENDANT

3.     Defendant Rogatinsky is 34 years old and resides in Fort Lauderdale, Florida. Rogatinsky was the chief executive officer ("CEO") and chairman of the board of PrintontheNet from March 1999 until June 2000, when he resigned from these positions.  He also was the president of PrintAmerica before its acquisition by PrintontheNet.   Rogatinsky holds an accounting degree from the University of Texas and obtained a C.P.A. license in Texas in 1994.

## RELIEF DEFENDANT

4.     Relief Defendant, R. Rogatinsky, is Defendant Rogatinsky's father, and resides in Hollywood, Florida.   He formerly owned and operated various businesses and loan guarantees acquired by PrintontheNet.   R. Rogatinsky was the recipient of $114,000, in investor proceeds that Defendant Rogatinsky funneled through R. Rogatinsky's offshore accounts.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.   These provisions authorize the Commission to seek the imposition of civil money penalties for violations of the federal securities laws.

6.      Venue is appropriate in the Southern District of Florida.   Certain of the acts and transactions constituting violations of the Securities Act and the Exchange Act have occurred within the Southern District of Florida.   Defendant and Relief Defendant both reside in the Southern District of Florida and have engaged in the acts, transactions, and practices complained of herein within this District.

7.      Defendant and Relief Defendant, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business complained of herein.

## FACTUAL ALLEGATIONS

8.      PrintontheNet issued the securities offered and sold to investors in the fraudulent scheme.   PrintontheNet, an Internet based provider of printing services, was formerly headquartered in Miramar, Florida until it ceased operations in March 2002.   In October 2001, PrintontheNet consented to an order that it cease-and-desist from committing or causing any violation of Section 17(a) of the Securities Act and Sections 10(b), 13(a) and 13(b)(2) of the Exchange Act and Rules 10b-5, 13b2-1, 12b-20 and 13a-11, thereunder.

3

9.     The fraudulent conduct alleged herein arose out of events that occurred following a merger and public offering of PrintontheNet.  In November of 1999, PrintontheNet conducted a reverse merger that made PrintontheNet a public company and in which it acquired a related company, PrintAmerica.  At the time of the acquisition, Rogatinsky was PrintAmerica's president.

10.     In January 2000, PrintontheNet commenced a private placement offering.  The offering closed in mid-February 2000 and raised approximately $3 million from accredited investors.  At the time, Rogatinsky was PrintontheNet's chief executive officer.  During this period, Rogatinsky violated the federal securities laws by: 1) failing to disclose millions of dollars in loan guarantees; 2) filing financial reports that misstated PrintontheNet's and PrintAmerica's financial performance; and 3) misappropriating at least $115,000 in investor funds.

A.     **Rogatinsky's Intentional Concealment of the Loan Guarantees.**

11.     PrintontheNet's offering documents failed to disclose over $7.3 million in loans guaranteed by PrintontheNet, and that the largest loan underlying these guarantees (worth approximately $7 million) was in default.

12.     The loans underlying these guarantees originated between May 1997 and January 31, 2000, when various companies owned and operated by the Rogatinsky family entered into lending arrangements with two different financial institutions.  The loans were factoring arrangements and lines of credit, whereby the companies received advanced payments against their outstanding accounts receivable.  PrintAmerica was a guarantor on these loans until PrintontheNet acquired it in November 1999, at which time PrintontheNet assumed those guarantees.

4

13.     These guarantees were not disclosed in the financial statements that PrintontheNet attached to its private placement offering or in a Form 8-K filed with the Commission in January 2000 that disclosed the PrintAmerica merger.

14.     PrintontheNet's financial statements also failed to disclose that it was in default on the largest of the loans (in the amount of approximately $7 million) because another company controlled by the Rogatinsky family had provided the bank with fraudulent receivables.  In fact, even though the bank that extended this loan formally notified PrintontheNet of the default on or about February 1, 2000, the Company did not disclose this fact to investors.

15.     At the time that PrintontheNet filed its Form 8-K and disseminated the private placement memorandum, Rogatinsky was aware of the existence of the outstanding loan guarantees that PrintontheNet failed to disclose.  On five different occasions between May 1997 and October 1999 (just two months before PrintontheNet's securities offering), Rogatinsky signed the loan guarantees that PrintontheNet assumed when it acquired PrintAmerica. Moreover, on January 31, 2000, just seventeen days before the private placement closed, Rogatinsky signed additional loan guarantees on behalf of PrintontheNet and PrintAmerica in order to increase the lending limit on certain of those loans.

16.     Rogatinsky deliberately concealed the loan guarantees from investors and PrintontheNet's auditors.

17.     For example, in connection with a 1999 audit of PrintAmerica's financial statements, Rogatinsky provided the auditors with a management representation letter stating that all "related party transactions" and "guarantees" were properly recorded or disclosed in the financial statements.  Rogatinsky, however, never informed the auditors of the existence of

PrintAmerica's loan guarantees, nor did Rogatinsky provide the auditor with any documents reflecting the existence of such guarantees.

18.     Similarly, the placement agent for the private placement offering, along with its outside law firm, engaged in a due diligence review of PrintontheNet before proceeding with the offering.  The placement agent provided PrintontheNet with a written due diligence request that asked for copies of all "loan agreements," "guarantees," and "related documents."  Despite its clear request, neither PrintontheNet's outside counsel nor the placement agent received copies of the guarantees from either PrintontheNet or Rogatinsky.

**B.     Rogatinsky's Intentional Misstatement of PrintontheNet's Financial Performance.**

19.     In addition to concealing the loan guarantees, the financial statements included in the Form 8-K and the private placement offering documents fraudulently misrepresented PrintontheNet and PrintAmerica's financial performance for the nine-month period ended September 30, 1999.

20.     These misrepresentations were caused by, and made at the direction of, Rogatinsky.   Rogatinsky accomplished this by falsifying PrintAmerica's books and by affirmatively misrepresenting that PrintAmerica had repaid certain shareholder loans it owed to affiliates when in fact a significant portion of those loans remained outstanding.

21.     Specifically, the financial statements for PrintontheNet and PrintAmerica falsely represented that neither company had any outstanding shareholder loans.  In fact, for years PrintAmerica had borrowed money from related companies also owned by the Rogatinsky family that it recorded on its financial statements as shareholder loans.  By September 1999, the balance on those loans had reached approximately $582,000.

22.     PrintAmerica's general ledger contains a record dated September 27, 1999 reflecting the full repayment of these loans and reducing the liability for shareholder loans to zero.  At the time, however, these loans had not been paid.

23.     PrintAmerica's general ledger also contained multiple fictitious entries to sales and general and administrative expenses during the quarter ended September 30, 1999 that offset against the shareholder loan account.   These fictitious entries had the effect of inflating PrintAmerica's financial performance for the nine-month period ended September 30, 1999.  For example, the financial statements reflected net income of $96,371 when in fact, PrintAmerica suffered a net loss of approximately $430,000, during the same period.  In addition, the financial statements showed the combined net loss for PrintAmerica and PrintontheNet during the same time period of $196,793.  In reality, PrintAmerica and PrintontheNet lost $811,000.

24.     Rogatinsky who had access to Print America's general ledger, made each of the fictitious entries regarding the shareholder loans.

**C.      Rogatinsky's Misappropriation of Investor Funds**

25.     Although the private placement memoranda stated that PrintontheNet would use the offering proceeds for general business purposes, Rogatinsky misappropriated at least $115,000 of the offering proceeds for his own personal use.  PrintontheNet's records reflect suspicious transactions between PrintontheNet and offshore bank accounts that occurred shortly after the offering closed.

26.     One transaction in particular concerned a cashier's check issued by PrintontheNet to a Romanian company for $115,000, purportedly made, using proceeds from the offering, to computer programmers hired by the company.  Rogatinsky personally issued the check from

PrintontheNet's bank account in Florida shortly before he was forced to resign from his positions with the Company.

27.    Subsequently, the check was deposited into a bank in Israel, and Rogatinsky's father, Relief Defendant, R. Rogatinsky, received the $115,000 through a bank account he controls in Israel.   R. Rogatinsky later forwarded those funds to his account in the Cayman Islands.

28.    Additionally, upon information and belief, Rogatinsky may have diverted an additional $111,000 of the offering proceeds using a nominee account in the Bahamas.

## COUNT I

### FRAUD IN THE OFFER OR SALE OF SECURITIES IN VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT

29.    The Commission repeats and realleges its allegations set forth at paragraphs 1 through 28 of this Complaint as if fully restated herein.

30.    Since a date uncertain, but at least since the fall of 1999, Defendant Rogatinsky, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, as described herein, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

31.    By reason of the foregoing, Rogatinsky has violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, [15 U.S.C. § 77q(a)(1).]

## COUNT II

### FRAUD IN VIOLATION OF SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT

32.    The Commission repeats and realleges its allegations set forth at paragraphs 1 through 28 of this Complaint as if fully restated herein.

33.     Since a date unknown but since at least Fall of 1999, Defendant Rogatinsky, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, has been: (a) obtaining money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaging in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

34.     By reason of the foregoing, Defendant Rogatinsky, directly and indirectly, has violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, [15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3)].

## COUNT III

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES IN VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

35.     The Commission repeats and realleges its allegations set forth at paragraphs 1 through 28 of this Complaint as if fully restated herein.

36.     Rogatinsky, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national exchange, in connection with the purchase or sale of securities, as described herein, has knowingly, willfully or recklessly:

(a)     employed devices, schemes or artifices to defraud;

(b)     made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

9

(c)    engaged in acts, practices and courses of business, which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

37.    By reason of the foregoing, Rogatinsky has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)], and Rule 10b-5, [17 C.F.R. § 240. 10b-5], thereunder.

**COUNT IV**

**FILING MISLEADING REPORTS IN VIOLATION OF SECTION 13(a) OF THE EXCHANGE ACT AND RULES 13a-11 AND 12b-20**

38.    The Commission repeats and realleges its allegations set forth at paragraphs 1 through 28 of this Complaint as if fully restated herein.

39.    Section 13(a) of the Exchange Act and Rule 13a-11 thereunder require issuers of registered securities to file with the Commission factually accurate periodic reports.   Rule 12b-20 of the Exchange Act requires that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

40.    At the time PrintontheNet filed its Form 8-K with the Commission it was subject to the requirements of Section 13(a) of the Exchange Act and the rules thereunder. PrintontheNet violated these provisions when it filed false and misleading reports with the Commission.

41.    Rogatinsky is directly liable for these violations under Section 20(a) of the Exchange Act, which provides liability for every person who, directly or indirectly, controls any

10

person liable under any provision or rule of the Exchange Act.   Rogatinsky signed the Form 8-K knowing that it omitted to disclose the existence of and nature of the loan guarantees assumed by PrintontheNet and that it misrepresented PrintontheNet and PrintAmerica's net income for the nine-month period ended September 30, 1999.   Moreover, Rogatinsky had the ability to direct, and in fact directed, the management and policies of PrintontheNet and was therefore a controlling person  pursuant to Section 20(a).

42.    As a result of the conduct described above, Rogatinsky violated Section 13(a) of the Exchange Act [15 U.S.C. §§78m(a)] and Rules 13a-11 and 12b-20 thereunder [17 C.F.R. §§240.13a-11 and 240.12b-20].

## COUNT V

## VIOLATIONS OF SECTIONS 13(b)(2)(A) AND 13(b)(2)(B) OF THE EXCHANGE ACT

43.    The Commission repeats and realleges its allegations set forth at paragraphs 1 through 28 of this Complaint as if fully restated herein.

44.    Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, commonly referred to as the "books and records" and "internal controls" provisions, respectively, of the federal securities laws, require generally that issuers that have securities registered pursuant to Section 12 of the Exchange Act make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect their transaction and disposition of assets of the issuer. They also require issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: transactions are booked accurately, in accordance with management's general or specific authorization; and in a manner designed to permit the preparation of financial statements in conformity with generally accepted accounting principles.

45.     At the time PrintontheNet filed its Form 8-K with the Commission it was subject to the requirements of Sections 13(b) of the Exchange Act and the rules thereunder. PrintontheNet's books and records were not accurate and as shown by Rogatinsky's ability to manipulate the Company's general ledges, PrintontheNet failed to devise and maintain a system of internal accounting controls.

46.     Rogatinsky is directly liable for these violations under Section 20(a) of the Exchange Act, which provides liability for every person who, directly or indirectly, controls any person liable under any provision or rule of the Exchange Act.  Rogatinsky had the ability to direct, and in fact directed, the management and policies of PrintontheNet and was therefore a controlling person pursuant to Section 20(a).

47.     As a result of the conduct described above, Rogatinsky violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C.§§78m(b)(2)(A) and (B)].

## COUNT VI

### VIOLATIONS OF SECTION 13(b)(5) OF THE
### EXCHANGE ACT AND RULES 13b2-1 AND 13b2-2

48.     The Commission repeats and realleges its allegations set forth at paragraphs 1 through 28 of this Complaint as if fully restated herein.

49.     Section 13(b)(5) of the Exchange Act prohibits any person from, among other things, knowingly circumventing a system of internal accounting controls or failing to implement a system of internal accounting controls.  In addition, Rule 13b2-1 prohibits any person from falsifying, or causing to be falsified, books, records, or accounts subject to Section 13(b)(2)(A) of the Exchange Act, while Rule 13b2-2 prohibits any officer or director of an

issuer from making or causing to be made a materially false or misleading statement to an accountant in connection with an audit or the preparation of any public filing.

50.     Upon information and belief, Rogatinsky falsified PrintontheNet's books and records so they did not accurately reflect the outstanding loan guarantees from the PrintAmerica acquisition or the interest-free loan PrintAmerica had received that purportedly had been repaid. In addition, Rogatinsky made misleading statements concerning the existence of PrintAmerica's loan guarantees to PrintAmerica and PrintontheNet's auditors during the preparation of the audited PrintAmerica financial statement included in PrintontheNet's Form 8-K

51.     As a result of the conduct described above, Rogatinsky violated Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that Rogatinsky committed the violations of the federal securities laws alleged herein.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction, restraining and enjoining: Defendant Rogatinsky, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him, from violating: (a)  Sections 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act, [15 U.S.C. §§ 77q(a)(1), 77(q)(a)(2) and 77(q)(a)(3)]; (b) Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b), and Rule 10b-5, [17 C.F.R. § 240.10b-5], thereunder; and (c) Sections 13(a), 13(b)(2)(A) and (B)

and 13(b)(5) of the Exchange Act, [15 U.S.C. §§ 78m(a), 77m(b)(2)(A) and (B), 78m(b)(5)], and Rules 13a-11, 13b2-1, 13b2-2 and 12b-20, [17 C.F.R. §§240.13a-11, 240.13b2-1, 240.13b2-2 and 240.12b-20], thereunder.

## III.

### Disgorgement

Issue an Order requiring Rogatinsky and Relief Defendant R. Rogatinsky, jointly and severally, to disgorge all ill-gotten profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## IV.

### Penalties

Issue an Order directing Rogatinsky to pay civil money penalties pursuant to Section 20(d) of the Securities Act, [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act, [15 U.S.C. § 78(d)(3)].

## V.

### Asset Freeze

Issue an Order temporarily freezing the assets of Rogatinsky and Relief Defendant Reuven Rogatinsky until further Order of the Court.

## VI.

### Accounting

Issue an Order requiring accountings from Rogatinsky and Relief Defendant Reuven Rogatinsky.

## VII.

### Repatriation Order

Issue an Order requiring Rogatinsky and Relief Defendant R. Rogatinsky to take such steps as necessary to repatriate to the territory of the United States all funds and assets of investors described in the Commission's Complaint in this action which are held by them or are under their direct or indirect control, jointly or singly, and deposit such funds into the registry of the United States District Court for the Southern District of Florida, and provide the Commission and the Court a written description of the funds and assets so repatriated.

## VIII.

### Officer and Director Bar

Issue an order barring Rogatinsky from serving as an officer or director of any public company, pursuant to Section 21(d)(2) of the Exchange Act, as amended by the Sarbanes-Oxley Act of 2002.

## IX.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## X.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  April  3 , 2003                    Respectfully submitted,


By:        _____
           Alise Johnson
           Senior Trial Counsel
           Florida Bar No. 0003270
           Direct Dial:  (305) 982-6322
           johnsona@sec.gov

           Ivan P. Harris
           Assistant Regional Director
           Florida Bar No. 0085405
           Direct Dial: (305) 982-6340

           Attorneys for Plaintiff
           SECURITIES AND EXCHANGE COMMISSION
           801 Brickell Avenue, Suite 1800
           Miami, Florida 33131
           Telephone: (305) 982-6300
           Facsimile:  (305) 536-4154

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

03-60648

GIN MARTINEZ

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

BENJAMIN ROGATINSKY, Defendant, and
REUVEN ROGATINSKY, Relief Defendant.

MAGISTRATE JUDGE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

Broward 03CV60648/Martinez

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  **BROWARD**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Alise M. Johnson, Esq.  (305) 982-6322
Ivan P. Harris, Esq.  (305) 982-6342
SEC, 801 Brickell Avenue, Suite 1800
Miami, FL 33131

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  (BROWARD,)  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government
     Plaintiff

☐ 2 U.S. Government
     Defendant

☐ 3 Federal Question
     (U.S. Government Not a Party)

☐ 4 Diversity
     (Indicate Citizenship of Parties
     in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                      AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | PERSONAL INJURY (TORTS) | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | ☐ 840 Trademark | ☒ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. § 77q(a)(1); 15 &.S.C. : 78j(b), 17 C.F.R. § 240.10b-5; 15 U.S.C. §§ 77q(a)(2) and
77q(a)(3); 15 U.S.C. §§ 78m(a), 17 C.F.R. §§ 240.13a-11 and 240.12b-20; 15 U.S.C. §§ 78m(b)(2)(A)
via 3 days estimated (for both sides to try entire case)  and (B); 15 U.S.C. § 78m(b)(5). Violations of the federal securities laws.

LENGTH OF TRIAL

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $                   Perm. Inj., Disg.,
                                  Civil Penalties, Asset freeze

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  4/3/03

SIGNATURE OF ATTORNEY OF RECORD
Alise M. Johnson, Senior Trial Counsel

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____